UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PENNY L. VALDEZ,                    ) NO. ED CV 13-1149-AS
                                    )
            Plaintiff,              ) **MEMORANDUM AND OPINION**
                                    )
        v.                          )
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
            Defendant.              )
                                    )

**PROCEEDINGS**

     On June 27, 2013, Plaintiff filed a Complaint seeking review
of the Commissioner's denial of disability benefits (Docket Entry
No. 1).   On August 21, 2013, the matter was transferred and
referred to the current Magistrate Judge.   (Docket Entry No. 9).
On  January  9,  2014,  Defendant  filed  an  Answer  and  the
Administrative Record ("A.R.").   (Docket Entry Nos. 17-18).   The
parties have consented to proceed before a United States Magistrate

1

Judge.  (Docket Entry Nos. 11, 14).  On March 31, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim.  (Docket Entry No. 21).  The Court has taken this matter under submission without oral argument.  See C.D. Local R. 7-15; "Case Management Order," filed June 11, 2013 (Docket Entry No. 4).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former eligibility worker and office manager (A.R. 23), asserts disability beginning October 7, 1996,[1] based on the alleged physical impairments of fibromyalgia, chronic fatigue syndrome, and herniated disc.  (Id. 145).  The Administrative Law Judge, Jay E. Levine ("ALJ"), examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Aida Y. Worthington, on August 8, 2012.  (Id. 30-56).  Plaintiff was represented by counsel at the hearing.  (Id.).  On September 6, 2012, the ALJ issued a decision finding that Plaintiff was not disabled and denyied Plaintiff's application for disability benefits.  (Id. 17-24).  On April 3, 2013, the Appeals Council denied review. (Id. 3-8).

The ALJ followed the five-step evaluation process for determining whether a claimant is disabled set forth in 20 C.F.R. § 404.1520, and made the following findings: (1) Plaintiff has the severe medically determinable impairment of chronic fatigue

---

[1]   This date was determined to be Plaintiff's "date of disability" under the Arizona State Retirement System Long Term Disability Plan.  (A.R. 139).

syndrome. (Id. 19). The ALJ determined that Plaintiff's conditions of hypertension, and Epstein Barr virus were non-severe. (Id.). The ALJ specifically rejected Plaintiff's claim of fibromyalgia, noting that, although Dr. Pont had noted this diagnosis on May 18, 1997, there was no evidence in the record that Dr. Pont or any other physician had ever assessed Plaintiff according to the official diagnostic criteria of fibromyalgia, which requires *widespread* pain, *and* pain in 11 of 18 trigger points on digital palpitation. (Id. 20); (2) Plaintiff's impairments do not meet or equal a listing impairment (Id.); (3) Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that she cannot work on unprotected heights or dangerous machinery; cannot have temperature extremes; can only occasionally stoop, bend, and climb stairs and ramps; cannot climb ladders; and cannot perform forceful gripping or grasping with either hand. (Id.); and (4) Relying on the VE's testimony, Plaintiff was able to perform her past relevant work as an eligibility worker (Dictionary of Occupational Titles ("DOT") No. 195.267-010); and office manager (DOT No. 169.167-034). (A.R. 23-24). In making these findings, the ALJ found Plaintiff's allegations and testimony regarding the intensity, persistence, and limiting effects of her symptoms to be less than fully credible. (Id. 21).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date through the last insured date of December 31, 2001. (Id. 24).

3

1

2

**PLAINTIFF'S CONTENTION**

3

    Plaintiff contends that the ALJ erred in his assessment of

4

Plaintiff's credibility.  (Joint Stip. 4).

5

6

**STANDARD OF REVIEW**

7

8

    This Court reviews the Commissioner's decision to determine if

9

(1)the Commissioner's findings are supported by substantial

10

evidence; and (2) the Commissioner used proper legal standards.  42

11

U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th

12

Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

13

"Substantial evidence is more than a scintilla, but less than a

14

preponderance."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

15

1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.

16

1997).  It is relevant evidence  "which a reasonable person might

17

accept as adequate to support a conclusion."  Hoopai, 499 F.3d at

18

1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)).   To

19

determine whether substantial evidence supports a finding, "a court

20

must 'consider the record as a whole, weighing both evidence that

21

supports and evidence that detracts from the [Commissioner's]

22

conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir.

23

1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063,

24

1066 (9th Cir. 2006) (inferences "reasonably drawn from the record"

25

can constitute substantial evidence).

26

    This Court "may not affirm [the Commissioner's] decision

27

simply by isolating a specific quantum of supporting evidence, but

28

must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## APPLICABLE LAW

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive

physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical

and mental work activities on a sustained basis despite limitations from all his impairments.  20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date.  If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Tackett, 180 F.3d at 1098.

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[2] legal error.

---

[2]  The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

## A.   <u>New Evidence to Appeals Council</u>

Plaintiff alleges that the new evidence she submitted to the Appeals Council after the ALJ issued his decision supports her complaints. (Joint Stip. 6-9).

When the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir. 2012). When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence based on the record as a whole. <u>Id.</u> at 1161-62.

Here, Plaintiff presented additional medical evidence to the Appeals Council, and the Appeals Council ordered that the new evidence be made part of the record. (A.R. 7, 320-492). The Appeals Council denied Plaintiff's request for review. (<u>Id.</u> 3). Accordingly, the Court must consider this new evidence in determining whether the ALJ's decision was supported by substantial evidence.

///
///
///

8

**B.    The ALJ Did Not Materially Err in Evaluating Plaintiff's Credibility**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect."  Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).[3]   Generalized, conclusory findings do not suffice.   See

---

[3]   In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" (continued...)

9

1  _Moisa v. Barnhart_, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's

2  credibility findings "must be sufficiently specific to allow a

3  reviewing court to conclude the [ALJ] rejected [the] claimant's

4  testimony on permissible grounds and did not arbitrarily discredit

5  the claimant's testimony") (citation and internal quotation marks

6  omitted); _Holohan v. Massanari_, 246 F.3d 1195, 1208 (9th Cir. 2001)

7  (the ALJ must "specifically identify the testimony [the ALJ] finds

8  not to be credible and must explain what evidence undermines the

9  testimony"); _Smolen_, 80 F.3d at 1284 ("The ALJ must state

10  specifically which symptom testimony is not credible and what facts

11  in the record lead to that conclusion."); _see also_ SSR 96-7p.

12

13  Plaintiff asserts that the ALJ erred in assessing Plaintiff's

14  credibility by failing to provide specific, clear, and convincing

15  reasons for challenging her credibility. (Joint Stip. 4, 9). She

16  also alleges that the ALJ's adverse credibility determination was

17  not supported by substantial evidence. (_Id._).

18

19  As set forth below, the ALJ stated sufficient reasons for

20  deeming Plaintiff's testimony about the limiting effects of her

21  symptoms less than fully credible. Plaintiff testified to the

22  following limitations:

23

24  [3](...continued)
    standard.  _See, e.g._, _Chaudhry v. Astrue_, 688 F.3d 661, 670, 672
    n.10 (9th Cir. 2012);  _Molina v. Astrue_, 674 F.3d 1104, 1112 (9th

25  Cir. 2012); _Taylor v. Comm'r_, 659 F.3d 1228, 1234 (9th Cir. 2011);
    _Valentine v. Comm'r_, 574 F.3d 685, 693 (9th Cir. 2009); _Ballard v._

26  _Apfel_, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000)
    (collecting cases).  As set forth _infra_, the ALJ's findings in this

27  case are sufficient under either standard, so the distinction
    between the two standards (if any) is academic.

28

The claimant testified she stopped working in October 1996 due to her illness. She said she had been diagnosed with Epstein Barr in 1992 and her condition was up and down. She said around the time she stopped working she started to have body aches, low-grade fever, and tiredness, and she was trying to work while on medication as well. She said she had feelings of exhaustion all the time and it came on over a period of time. She said she was eventually diagnosed with chronic fatigue syndrome and [s]he constantly feels weak and exhausted. She alleged she had difficulty with sitting and standing during the period at issue, and she could only sit for five to twenty minutes.

(A.R. 21; see also id. 30-47). The ALJ also considered Plaintiff's July 3, 2009, exertion questionnaire, finding that her statements in that report "are of the same general nature as the subjective complaints" from her testimony. (Id. 21). After considering the record and the testimony presented at the hearing, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms "not credible to the extent they are inconsistent with" the ALJ's RFC. (A.R. 21). The ALJ found Plaintiff to be "partially credible because she had some limitations during the period at issue, but not to the extent she alleged." (Id.).

The ALJ gave the following reasons for deeming Plaintiff's testimony less than fully credible: (1) the relatively infrequent

visits to the doctor for allegedly disabling symptoms, and no evidence of treatment for any period shortly before the alleged onset date of October 7, 1996 until a routine office visit in February 1997, and a significant gap in treatment history between an office visit in August 1999 until 2001;[4] (2) Plaintiff continued to work, despite her alleged impairment, prior to the alleged onset date, and the record does not reflect an increase in the level of severity of her symptoms around the alleged onset date; (3) Plaintiff received routine and conservative treatment around the alleged onset date and afterwards; and (4) although Plaintiff alleges depression and was taking medication for it, she did not see any treating mental health professional during the relevant period. (Id. 21-23).

The Court finds that the ALJ stated legally sufficient reasons for his adverse credibility finding.

**1.  Lack of Insurance**

Plaintiff submitted a declaration to the Appeals Council, following the ALJ's decision denying benefits, in which she stated that the reason she did not visit her doctors more often was the result of her inability to afford medical treatment after she stopped working and lost her insurance. (Joint Stip. 7; see also

---

[4]  Although the decision states "2011" instead of "2001," a review of the exhibit cited by the ALJ in support of his statement shows this to be a typographical error: the date should read "2001." (A.R. 22 (citing id. 189)).

A.R. 182).  Plaintiff claims that after paying approximately $400 per month for continuing coverage after her last day of work on October 7, 1996, she soon stopped paying for coverage and "had no insurance going into 1997."  (Id.).  On June 26, 2010, Plaintiff obtained Medi-Cal coverage retroactive to May 2008 but claims she was without insurance coverage from January 1997 through June 26, 2010.  (Id.).

An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).  However, an ALJ may not reject symptom testimony where a claimant has a "good reason" for not seeking treatment, i.e., the claimant is uninsured or unable to afford medical care.  Smolen, 80 F.3d at 1284; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).

Based on the record before him, the ALJ properly considered the fact that Plaintiff's treatment had been infrequent during the relevant period.  However, Plaintiff's declaration to the Appeals Council that she did not have insurance during the relevant period, provides a good reason for not seeking more frequent treatment.  Therefore, Plaintiff's infrequent treatment is not a legally valid reason for discounting Plaintiff's credibility.

As discussed below, however, the ALJ's decision was not entirely based on her record of infrequent treatment or the gaps in

her treatment record.  Because he articulated several other legally sufficient reasons for discrediting her subjective complaints,  the ALJ did not err in denying benefits.   See Robbins v. Social Security Administration, 466 F.3d 880,  883 (9th Cir. 2006)(ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).

### 2.   Continued to Work Despite Diagnosis

The ALJ found that, although she was diagnosed with Epstein Barr in 1992 (id. 316-19), Plaintiff did not stop working until October 1996 (id. 34) and therefore continued to work despite her impairment.  This finding is fully supported by the record and is a valid reason for discounting Plaintiff's credibility.   See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (substantial evidence supported ALJ's finding that claimant was not disabled where her condition remained constant for a number of years and she had worked during that time).

### 3.   Infrequent and Conservative Treatment, and No Increase in Symptoms

The ALJ found that Plaintiff had relatively infrequent trips to her doctors during the period around her alleged onset date of October 7, 1996, until her last insured date of December 31, 2001. (A.R. 21, 22).  He also found that the record did not reflect an increase in the severity of Plaintiff's symptoms around the alleged onset date.  (Id.).

14

The ALJ found no evidence of treatment for *any* period from shortly before the alleged onset date of October 7, 1996 (when Plaintiff still had insurance), until her February 1997 office visit for general care treatment. (Id. 22 (citing id. 307)). Plaintiff's next office visit was on May 21, 1997, when Plaintiff saw her physician to report swelling of her ankles in the evening.[5] (Id. (citing id. 306)). Plaintiff next saw a doctor on August 24, 1998, "seeking a primary care physician, medication refills, and someone to fill out disability forms."[6] (Id. (citing id. 184-85)). In April 1999 Plaintiff presented at the emergency room with numbness in her left fourth and fifth digits, and some facial asymmetry. (Id. (citing id. 246-52)). Examination showed decreased sensation to light touch and two-point discrimination on the left hand ulnar distribution. (Id. (citing id. 246-52)). There was no follow-up treatment for this pain. (Id.). The record reflects three office visits for routine medication management in 1999, including two appointments that Plaintiff cancelled or failed to show up for. (Id. (citing id. 190-92, 303)). After her last office visit in August 1999, there was no record of any treatment until 2001, when Plaintiff presented for chest tightness and a cough. (Id. (citing id. 189)).

---

[5] Despite her inability to afford regular medical care prior to these dates, it does not appear that Plaintiff used the opportunity offered by either of these office visits to obtain treatment for her allegedly disabling complaints. (See, e.g., A.R. 306, 307).

[6] During this visit, Plaintiff told the physician that she had been diagnosed with fibromyalgia and chronic fatigue syndrome, and was experiencing right shoulder blade pain. (A.R. 185). This physician referred her to a rheumatologist. (Id. 184).

15

The ALJ's findings that Plaintiff's medical visits were infrequent and consisted of routine and conservative treatment, and that there was no evidence of an increase in the severity of her symptoms around the alleged onset date, are supported by the record that was before him at the time he issued his decision.

After the ALJ issued his decision, however, Plaintiff presented new evidence to the Appeals Council, which she contends "paints a more detailed picture" of Plaintiff's condition surrounding the alleged onset date of October 7, 1996. (Joint Stip. 7; see also A.R. 320-492). Plaintiff claims that the additional records she submitted to the Appeals Council provide additional information which shows "a traumatic event on the alleged onset date," which resulted in Plaintiff being taken off work, and "several additional opinions that [Plaintiff] remained unable to return to work due to documented Epstein Barr Virus, chronic fatigue syndrome, and fibromyalgia."[7]  (Joint Stip. 9, citing A.R. 323-26, 361-62, 369-70, 375-78, 392-95, 396, 398-99, 400-06, 408-09, "et al.")).

The Court's review of the records cited by Plaintiff reveals

---

[7]  As set forth above, the ALJ evaluated Plaintiff's alleged impairment based on fibromyalgia and found no evidence in the record that Dr. Pont or any other physician had ever made an assessment of fibromyalgia according to the official diagnostic criteria of that diagnosis which requires widespread pain *and* pain in 11 of 18 trigger points on digital palpitation.  (A.R. 20). Thus, the ALJ found that "even giving the claimant's subjective complaints generous benefit of the doubt," he was "unable to find [that] fibromyalgia is a medically determinable severe impairment." (Id.).  Plaintiff does not contest this finding in her complaint.

that many of the referenced documents are outside the relevant period at issue of 1996-2001 (See, e.g., A.R. 323-26, 361-62, 369-70, 375-76), and are therefore irrelevant to the Court's analysis.

A number of the referenced documents relate to Plaintiff's long term disability insurance claim in Arizona, typically the "Attending Physician's Statements," that fall within the relevant period.[8] (See, e.g., id. 377-78, 392-95, 396, 398-99, 400-06, 407, 408-09, 422-23, 426-27, 438-44, 449-50). However, a review of these records reveals that most of the information is duplicative of what is already in the record, reflecting the same treatment dates in 1998 and 1999 discussed by the ALJ. (See, e.g., id. 377, 386, 387, 388, 392, 409). Two of the documents suggest that Plaintiff may have had additional office visits with Dr. Pont in 1997:[9] one visit on March 18, 1997 (id. 449), and one in August 1997 (id. 423). However, there are no documents in the record reflecting that Plaintiff saw Dr. Pont on either of these dates or that these two visits were related in any way to her subjective complaints. Accordingly, the Court finds that the additional documents submitted by Plaintiff to the Appeals Council fail to

---

[8] The ALJ gave the opinions of Dr. Pont, and Drs. Quion and Jaqua "little weight," because they were not supported by objective evidence and are inconsistent with the record as a whole. (A.R. 23). Although this finding is not at issue here, the additional records submitted to the Appeals Council do not provide any objective support for the opinions of Dr. Pont or the other physicians.

[9] The "supplementary report for benefits" form prepared by Dr. Pont on May 8, 1997 reflects Plaintiff's last office visit as "Mar[ch] 18, [10]97" and the form dated November 21, 1997 reflects Plaintiff's last office visit as "8/97." (A.R. 423, 449).

support her claim that the ALJ erred in his credibility analysis or that his decision was not supported by substantial evidence.

Plaintiff also cites to other documents which were submitted to the Appeals Council which purportedly contain additional evidence of her subjective complaints during the relevant period.

First, Plaintiff notes that she received injections for elbow pain in March 1996, and underwent other examinations of her elbow through 1997. (Joint Stip. 7-8 (citing A.R. 43, 452, 484-85; see also A.R. 478)). A review of the record reveals that Charles M. Creasman, M.D., saw Plaintiff on March 27, 1996, and after examining her right elbow determined she had "full range of motion," without neurologic deficit, was "tender over the triceps in extension," and noted that x-rays were unremarkable. (A.R. 452). Dr. Creasman diagnosed possible triceps tendinitis and gave Plaintiff an injection. (Id.). Although other records confirm that Plaintiff underwent "further examinations of her elbow," they do not support Plaintiff's allegations of disabling pain or limitations.

Next, Plaintiff alleges that on October 7, 1996, the alleged disability onset date, she "sustained an injury," and presented to her physician, Stephen M. Ortiz, M.D., with a "severely diminished range of motion in her arms and lumbar spine," and pain on leg raising bilaterally (Joint Stip. 8 (citing A.R. 455-56)). The record shows, however, that the injury sustained on October 7, 1996, was a slip and fall on the kitchen floor, resulting in an

injury to her lower back. (A.R. 455). Dr. Ortiz limited Plaintiff
to no work for one week until he could reevaluate her.[10] (Id. 456).
By October 16, 1996, Dr. Ortiz noted that Plaintiff's back showed
improvement but because she was having continuing pain in her right
shoulder and elbow, he ordered additional bone scans and kept her
out of work for another week until he was able to reevaluate her.
(Id. 457).

Plaintiff claims that her back had improved as of November 11,
1996 but she continued to complain about right shoulder pain and
that Dr. Ortiz's evaluation found that Plaintiff "exhibited
positive impingement," and suggested that surgery "may benefit
Plaintiff's right elbow." (Joint Stip. 8 (citing A.R. 459).
However, a review of the medical records reveals that Plaintiff's
back pain was "much better from the last visit," Plaintiff reported
that her elbow pain "is worse in a flexed position" then when
extended, but that her right elbow has full range of motion with no
pain with impaction or distraction of that joint, and Plaintiff's
right elbow did show positive impingement testing. (A.R. 459).
The record also states that Dr. Ortiz did *not* suggest surgery – he

[10] The Court notes that at the hearing Plaintiff testified
that she stopped working because she started having "body aches
everywhere . . . , [l]ow-grade fever, so tired . . . . I was on
meds. I couldn't function at my job. I just plain couldn't
function," and "[t]hat was what made me go to the doctor in the
first place." (A.R. 34, 38). She stated that her doctor
recommended she apply for long term disability at first as a
"short-term thing." (Id. 36). Again, Plaintiff made no mention of
the slip and fall that precipitated this recommendation. In fact,
a review of the transcript demonstrates that she *never* mentioned
this slip and fall in the kitchen which appears to have actually
precipitated her departure from work. (See generally id. 30-55).

merely noted that he had nothing further to offer Plaintiff with
respect to conservative treatment, and referred Plaintiff to Dr.
Creasman to "*consider* surgical exploration about the right medial
elbow." (Id. (emphasis added)).  The record also reveals that Dr.
Creasman "did not think [surgery] would be a productive approach."
(See, e.g., id. 472).

Plaintiff also refers to a January 13, 1997, progress note
apparently from Dr. Wilson, a hand surgeon, in which he stated that
Plaintiff exhibited poor range of motion throughout the right arm
with mild medial left elbow pain to touch. (Joint Stip. 8 (citing
A.R. 460)).  Dr. Wilson's physical examination found poor range of
motion of the right shoulder and pain over the deltoid and anterior
of the right shoulder, more pain with external rotation than
internal rotation, and an inability to touch behind her head or
back.  (A.R. 460).  Although there is no record of Dr. Wilson's
treatment of Plaintiff's complaints, a record dated April 3, 1997
from rheumatologist Benjamin K. Harris, M.D. noted that in January
1997, Dr. Wilson gave Plaintiff a steroid injection and referred
her to physical therapy.  (Id. 472).  Thus, Dr. Wilson's progress
note does not support Plaintiff's claim of debilitating limitations
or discredit the ALJ's finding that Plaintiff received routine and
conservative treatment for her pain.

Plaintiff next contends that on April 3, 1997, she reported to
Dr. Harris that she had been told by a physical therapist that she
was too "sensitive" and not a good candidate for physical therapy
(Joint Stip. 8 (citing A.R.   472)), and that Dr. Harris found

Plaintiff had limited range of motion in the cervical and lumbar spine, and marked tenderness in her elbows, especially on the right (id. (citing A.R. 473).  A review of Dr. Harris' records reveals that Plaintiff also reported that she had recently undergone a complete physical with laboratory studies and that "the results were normal."  (A.R. at 472).  Moreover, Dr. Harris noted that Plaintiff had been seen by Dr. Alan Yudell in late 1996, and that Dr. Yudell did not think Plaintiff had a neurologic problem. (Id.).  Dr. Harris concluded that Plaintiff's "examination is most consistent with a diagnosis of cervical spondylosis and lateral epicondylitis."   Thus, Dr. Harris' record does not support Plaintiff's claims of disabling limitation as a result of her pain.

The Court finds that, even after reviewing  the records that Plaintiff submitted to the Appeals Council, the ALJ's finding of non-disability is supported by substantial evidence.   At best, these additional documents provide come evidence that Plaintiff's visits to her physicians were marginally more frequent than the ALJ had believed.  Given Plaintiff's declaration regarding lack of insurance, and the Court's finding that the ALJ could not properly rely on Plaintiff's infrequent office visits during the relevant time period to discredit her credibility, these records provide little, if any, new  information that was not previously before the ALJ.  More importantly, these records do not refute the the ALJ's findings that Plaintiff's treatment had been routine and conservative,[11] and that the record reflects no increase in the

_____

[11]   See, e.g., Johnson, 60 F.3d at 1432 (ALJ may properly rely
(continued...)

level of severity of her symptoms around the alleged onset date. Accordingly, the Court finds that the ALJ's reliance on Plaintiff's routine and conservative treatment and the fact that there was no increase in the level of severity of her symptoms around the alleged onset date are legally valid reasons for discounting Plaintiff's credibility.

### 4.   **Lack of Treatment for Mental Health Issues**

Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony regarding mental health issues during the relevant time period due to a lack of treatment for depression. (Joint Stip. at 8).  Plaintiff provided a May 1997 medication list reflecting that she had been prescribed Amitriptyline, an antidepressant, and claims that this proves that she did receive treatment for her mental health problems.  (Id. 8-9 (citing A.R. 461)).

The ALJ acknowledged that Plaintiff was taking medication for her depression, but noted that she did not remember whether she ever "saw a psychiatrist, psychologist, or mental health professional during the relevant period [and] [t]he absence of treatment for this symptom is inconsistent with the alleged severity of the functional limitations imposed by this impairment and diminishes the credibility of those allegations." (A.R. 21).

---

(...continued)
on the fact that only conservative treatment has been prescribed).

In assessing credibility, an ALJ may properly rely on the plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms. Bunnell, 947 F.2d at 346. Plaintiff has explained this failure, albeit after the fact, as based on a lack of insurance, consistent with her explanation for the infrequent visits to physicians relating to her physical complaints of disability.

Notwithstanding the fact that Plaintiff was taking medication for depression, Plaintiff points to no evidence in the record to support her claim that her depression resulted in any functional limitations, that her medication was not helping her, that she was suffering any side effects from the medication, or that her symptoms had increased around the alleged onset date. See 20 C.F.R. § 404.1529(c) (an ALJ may consider "the type, dosage, effectiveness, and side effects of any medication"). Thus, any error on the ALJ's part in discrediting Plaintiff's testimony due to lack of treatment for depression was harmless.

The reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific findings

23

justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

**CONCLUSION**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 27, 2014.

_/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE